FILED
JAN 08 2008
JAN 08 2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| Respondant, ) | |
| v. ) | Case No. 01-CR-881 |
| ) | |
| FABIAN LAFUENTE, ) | Judge Harry D. Leinenweber |
| Movant. ) | |

### MOVANT'S MOTION UNDER 28 U.S.C. §2255 TO VACATE SET ASIDE OR CORRECT SENTENCE

Comes now the Movant, Fabian Lafuente, ("Lafuente") acting pro se and respectfully moves the court pursuant to Title 28 U.S.C. §2255 to vacate his sentence and conviction. In support hereof Lafuente submits the following:

### STATEMENT OF THE CASE

Lafuente was charged in a five count indictment charging Count One, Attempting to possess with intent to distribute cocaine in violation of 21 U.S.C. §846, Count Two, Possession with intent to distribute cocaine 21 U.S.C. §841(a)(1), Count Three, possessing a firearm with an altered serial number 18 U.S.C. §922(k), Count Four, False statement to obtain a firearm, and Count Five, 18 U.S.C. §924(c)(1). A jury convicted Lafuente on Counts One, Two, and Three.

On April 28, 2004, Lafuente was sentenced to 300 months. An Appeal was taken to the Seventh Circuit. On November 14, 2006, the Court of Appeals affirmed Lafuente's conviction but vacated his sentence and remanded for resentencing under Paldino, 401 F.3d 471 (7th Cir. 2005).

08CV160
JUDGE LEINENWEBER
MAGISTRATE JUDGE DENLOW

On August 13, 2007, the district court resentenced Lafuente to a total sentence of 188 months.

Lafuente now moves the court to vacate his conviction and sentence. This is Lafuente's first motion under 28 USC §2255.

### ATTORNEYS WHO REPRESENTED LAFUENTE

At Arraingment: Thomas J. Bronson, Chicago Illinois.

At Trial: Andrea Gambino, and Keri Ambrosio, Chicago Illinois.

At Sentencing: George N. Leighton, Chicago Illinois.

Appeal: Eric M. Schwing, Chicago Illinois.

Resentencing: Kent R. Carlson, Chicago Illinois.

Lafuente has no other action pending in any court in this matter.

### GROUNDS FOR RELIEF

GROUND NUMBER ONE:

Prior to trial and during trial Lafuente was denied effective assistance of counsel due to an actual conflict of interests because his attorney Andrea Gambino was investigated and facing serious criminal charges by the same U.S. Attorney's Office that was prosecuting Lafuente.

FACTS THAT SUPPORT GROUND NUMBER ONE:

Prior to Lafuentes trial and during his trial the United States Attorney's Office for the Northern District of Illinois was conducting a criminal investigation of attorney Andrea Gambino

2.

who had been found to be Harboring an illegal alien named Jorge Ramos-Gonzales in violation of Title 8 U.S.C. §1324 and Ms. Gambino was facing criminal prosecution by the same U.S. Attorney's Office that was prosecuting Lafuente. Ms. Gambino had been caught red-handed Harboring illegal alien Jorge Ramos-Gonzales and had admitted her guilt in the matter to the U.S. Attorney's Office. Ms. Gambino was at the complete mercy of the U.S. Attorney's Office and was cooperating fully with the U.S. Attorney.

To avoid her own criminal charges Ms. Gambino had an interest in maintaining a friendly and cooperative relationship with the U.S. Attorney's Office with a view to arriving at a favorable disposition to her criminal charges. At the same time Ms. Gambino had an interest and duty to maintain an adversarial position with the U.S. Attorney's Office and to vigorously represent Lafuente at trial. The inherant psychological barriers arising out of Ms. Gambino's conflicting obligations made effective representation of Lafuente impossible.

Prior to trial and during trial Ms. Gambino and her associate attorney Keri Ambrosio committed numerous intentional acts to conceal from Lafuente the fact that Gambino was facing serious criminal charges by the same U.S. Attorney's Office that was prosecuting him on drug trafficking charges. In fact it was Mr. Markus Funk the government's prosecutor that brought it to the courts attention that there existed a problem with Ms. Gambino's representation of Lafuente. Although Mr. Funk raised the issue he did not reveal on the record that Attorney Gambino was being investigated by his office and was facing serious criminal charges. (See Trial Transcript, page 32, 9/16/04).

When Mr. Funk alerted the court that there was a problem with Ms. Gambino's representation of Lafuente, Ms. Gambino vigerously objected and stated "she did not want to say what the problem is right now". (Trial Transcript, page 32). Prosecutor Mr. Funk then told the court "I don't believe we should proceed with the trial until this issue has been addressed". (Trial Tran, page 32).

Prosecutor Funk knew his office was investigating Ms. Gambino on criminal charges and that she was facing serious criminal prosecution by the same U.S. Attorney's Office that was prosecuting Lafuente. Mr. Funk also knew that Ms. Gambino had admitted her guilt and was fully cooperating with the U.S. Attorney's Office and those facts created an actual conflict of interests and Mr. Funk was trying to alert the court that there was a problem with Ms. Gambino's representation of Lafuente.

Ms. Gambino and her associate Keri Ambrosio effectively kept Lafuente from discovering that that she was facing serious criminal prosecution and had admitted her guilt to the U.S. Attorney's Office they knew that Lafuente would not allow them to represent him under such a conflict of interest. They had a pecuniary interest in continuing to represent Lafuente and stood to loose the Twenty Thousand dollars ($20,000.00) they had been paid to represent Lafuente if the conflict of interest was revealed to Lafuente.

Lafuente could not raise the conflict of interest issue before trial or at trial because the issue was effectively kept hidden from him by Ms. Gambino, Prosecutor Mr. Funk and the trial

4.

court. The records of this case show that Judge Leinenweber did not personally address Lafuente and advise him of the fact that there existed a problem with Ms. Gambino's representation of him and give Lafuente the opportunity to decide if he wanted to allow Ms. Gambino and Keri Ambrosio to continue representing him at trial. What Judge Leinenweber did was to ask Ms. Gambino if Lafuente wanted her to continue to represent him at trial.and Ms. Gambino answered yes he does. But Ms. Gambino did not advise the court that she had not advised Lafuente of the conflict of interest issues. (See          March 11, 2004, page 3, lines 5-19).

In fact it was not until after trial was over with that Ms. Gambino told Lafuente that she was having a problem with the Attorney Registration and Disciplinary Committee but she did not tell Lafuente what the problem was or that she was facing serious criminal charges by the same U.S. Attorney's Office (and had admitted her guilt) when Lafuente's father Arturo Lafuente hired her to represent Lafuente at his trial.   After Gambino advised Lafuente that she had a problem with the ARDC but refused to tell him what the problem was Lafuente advised Gambino she could no longer represent him in this case and Lafuente obtained the services of Attorney George N. Leighton, who filed a motion for a new trial based on Ms. Gambino's being under investigation by the Illinois Attorney Registration and Disciplinary Commission (ARDC). Lafuente's motion for a new trial states "The precise nature of this investigation is unclear, and remains unknown to Mr. Lafuente". (Motion for new trial, page 2). Lafuente's motion for a new trial also raised the issue that Ms. Gambino was under mental

5.

health treatment during trial and that Gambino had received a sanction of having her license's suspended. If Lafuente would have known that Ms. Gambino was facing serious criminal charges and had admitted her guilt to the same U.S. Attorney's Office that was prosecuting him he would have surely have presented those facts in support of his motion for a new trial. Lafuente could not raise what he did not know.

At trial Ms. Gambino and her associate Keri Ambrosio committed numerous acts of ineffectiveness including but not limited to the following (1) failure to object to prejudicial hersay testimony (2) failure to call witnesses wiyhout advising Lafuente of a decision not to call (3) badgering Lafuente to take the witness stand and testify when he did not want to (4) failure to prepare Lafuente to testify in his own defense that caused Lafuente to give testimony that supported the prosecution's case (5) presenting petitioner's case to the jury in such a manner that it appeared Lafuente had no defense witnesses and no defense (6) failure to effectively question the defense witnesses that were called (7) failure to prepare for trial and present an available defense (8) failed to make motion under Rule 29 Fed R. Crim. P. for judgment of acquittal (9) at the close of the evidence Ms. Gambino in error moved the court to enter a directed verdict. Any reasonable attorney knows direct verdicts are abolished (10) prior to trial Ms. Gambino failed to file an effective motion to suppress the evidence illegally taken from Lafuente's residence. (11) Gambino failed to challenge the search warrant and the affidavit given in support of the search warrant. Further proof and facts of Gambino's

and Ambroiso's ineffectiveness and prejudice are absent from the records because of counsel's omissions and because both Gambino and Ambrosio were ineffective.

Attorney Keri Ambrosio was ineffective because she knew of Gambino's conflict of interest and she remained silent and helped Ms. Gambino hide the conflict facts from Lafuente.

### MAJOR DEPRESSION

Additional facts that support Lafuente's claim of ineffectiveness is the fact that prior to trial and during trial Ms. Gambino was undergoing psychiatric treatment for major depression and was under the influence of mind altering psychotropic drugs that impared her cognitive abilities.

Ms. Gambino was under a great deal of stress as a results of her personal involvement with the illegal alien George Ramos-Gonzelas. Because of her personal and criminal relationship with Gonzales Ms. Gambino's relationship with her husband deterioated. Ms. Gambino had been fired from her job with the Federal Defenders Office. Ms Gambino was being investigated by the U.S. Attorney's Office and was facing serious criminal charges pursuant to Title 8 U.S.C. §1324, Bringing and Harboring Certain Aliens. Ms. Gambino had been caught red handed by authorities Harboring Gonzales, knowing him to be an illegal alien and aiding him to escape capture. (See Exhibit B, Complaint filed by ARDC against Ms. Gambino).

Ms. Gambino's world was falling apart and she was in fact suffering from major depression that contributed to an ineffectual defense.

7.

GROUND NUMBER TWO:

The trial court failed to make an adequate inquiry into an actual conflict of interets as required to protect Lafuente's Sixth Amendment right to counsel.

FACTS THAT SUPPORT GROUND NUMBER TWO:

After the start of trial it was brought to the court's attention that there existed a problem with Ms. Gambino's representation of Lafuente. Government prosecutors Mr. Marcus Funk and Mr. Matthew Getter raised the conflict issue on the record forcing Ms. Gambino to address the issue. The following conversation was had:

| | |
|---|---|
| MS. GAMBINO: | Your Honor the Government has brought to my attention an issue that has a bearing on my representation of Lafuente. (Trial Transcript page 32, lines 12-14). |
| THE COURT: | Why does it pop up right now? |
| MR. FUNK: | Your Honor from the Government's prespective it has not popped up just now. The significance of it was broad - from my bosses as it were - from their prespective and it is somthing that the court needs to address. (Trial Transcript, page 33, lines 6-10). |
| MR. FUNK: | I think it is more of a commidation to the defense in this case. It is simply somthing my superiors felt you should be appraised of for the record. (Trial Transcript, page 34, lines 3-5). |
| MS. GAMBINO: | Your Honor maby we can put whatever it needs on |

|||
|---|---|
| | the record. |
| THE COURT: | What about your client? |
| MS. GAMBINO: | No not for this. |
| THE COURT: | You waive his appearance. |
| MS. GAMBINO: | I waive his apperance. |
| THE COURT: | And the court reporter, |
| MS. GAMBINO: | I would prefer not unless you decide it needs to go on the record. (Trial Transcript, page 36, lines 3-11) |

(Discussion had in chambers off the record. Trial Transcript, page 36, line 15).

Lafuente was not in the courtroom when government prosecutor's raised the problem of Ms. Gambino's representation of Lafuente and Ms. Gambino waived his apperance so he could not be made aware that there existed a problem with Ms. Gambino's representation of him. Ms. Gambino's problem was discussed in chamber and off the record so Lafuente was never made aware that there existed an actual conflict of interests until after his trial was over.

It was not until after trial that Ms. Gambino advised Lafuente that she was she was under investigation by the Illinois Attorney Registration and Disciplinary Commission (ARDC) and that she was being sanctioned by the Illinois Supreme Court. Ms. Gambino did not advised Lafuente of the nature of the charges placed against her by the ARDC. Lafuente could not have raised the conflict of interest prior to trial or during trial because the court. U.S. Attorney's and Ms. Gambino effectively withheld the conflict facts

9.

from Lafuente. Ms. Gambino waived Lafuente's apperance when the conflict issue was discussed in the courtroom, the trial court discussed the conflict issue in chamber off the record, and the government prosecutors remained silent when they knew they had a duty to Lafuente to make sure he was advised of a serious actual conflict of interest before trial was had with Ms. Gambino representing him.

It was not until after trial that Lafuente's father Mr. Arturo Lafuente filed a Complaint against Ms. Gambino requesting the ARDC to conduct an investigation of Ms. Gambino on November 13, 2003, that Lafuente learned that prior to his trial and during his trial Ms. Gambino was being investigated by the same U.S. Attorney's Office that was prosecuting him. (See Exhibit's A and B).

During the time period Ms. Gambino was hired to represent Lafuente and during his trial Ms. Gambino was facing serious criminal charges and had admitted her guilt to the U.S. Attorney's Office. Ms. Gambino was facing a fine and maximum sentence of up to ten (10) years in prison pursuant to Title 8 U.S.C. §1324, Bringing in and harboring certain aliens. Ms. Gambino had been caught red handed harboring Jorge Ramos-Gonzales and aiding him to escape law enforcement authorities.

The trial court was made aware that there was a problem with Ms. Gambino's representation of Lafuente but due to the problem being discussed off the record in chambers it can not be assertened exactly what was revealed to the court by Ms. Gambino or the content of the discussion. In any event the court failed to make adequate inquiry into the actual conflict of interest as required

to protect Lafuente's Sixth Amendment right to conflict free counsel. Even if the court did not know that Ms. Gambino was being investigated by the U.S. Attorney's Office that was prosecuting Lafuente and facing serious criminal charges an adequate inquiry by the court would have revealed an actual conflict. Based on what the court learned in chambers from Ms. Gambino the court should have conducted a hearing with Lafuente present and allowed Lafuente to decide if he wanted to proceed to trial with Ms. Gambino and Keri Ambrosio as his trial counsel.

The record shows that the conflict of interest claim presented herein is not the same conflict of interest claim raised in Lafuente's motion for a new trial or on direct appeal. This conflict of interest is based on Ms. Gambino being investigated and facing serious criminal charges by the same U.S. Attorney's during her representation of Lafuente. (See Lafuente's Memorandum of Law in support of this conflict of interest claim, Exhibit C).

GROUND NUMBER THREE:

Ms. Gambino was ineffective for badgering and coercing Lafuente into taking the witness stand.

FACTS THAT SUPPORT GROUND NUM,BER THREE:

Prior to trial Lafuente told Ms. Gambino that he did not want to take the witness stand and testify. Ms. Gambino agreed that she would not call Lafuente to testify.

Just before the start of trial Ms. Gambino suprised Lafuente

by telling him she was going to call him to testify because he had no other defense. Lafuente told Ms. Gambino not to call him to testify. Ms. Gambino told Lafuente I am going to call you to the stand and if you refuse to take the stand in front of the jury they will think you have somthing to hide and they will convict you.

When Ms. Gambino called Lafuente to the witness stand in front of the jury Lafuente was afraid to let the jury see him object or refuse to take the stand for fear the jury would think he had somthing to hide and was guilty. So out of fear and not knowing how to handle the situation Lafuente took the stand when he did not want to and he was not prepared to testify. (See Exhibit C, Lafuente's Affidavit ).

GROUND NUMBER FOUR:

Ms. Gambino was ineffective for failing to prepare Lafuente to testify in his own defense.

FACTS THAT SUPPORT GROUND NUMBER FOUR:

That prior to trial and calling Lafuente to testify Ms. Gambino did not prepare Lafuente to testify. Ms Gambino did not discuss what questions the prosecution might ask or how Lafuente should answer certain questions to avoid incriminating himself.

Ms. Gambino knew Lafuente was not prepared to testify and did not want to testify. Because Ms. Gambino did not prepare him to testify Lafuente unknowingly made statements that prejudiced his defense and helped the prosecution to convict him.

GROUND NUMBER FIVE:

Ms. Gambino was ineffective for failing to object to hearsay testimony that was prejudicial to the defense.

FACTS THAT SUPPORT GROUND NUMBER FIVE:

During Lafuente's trial government witness Marc Anton gave hearsay testimony that prejudiced the defense. Marc Anton's testimony was crucial to the governments case against Lafuente. Anton played a major role in the investigation of Lafuente and monitoring the transaction between confidential informant David Ortiz, and Lafuente.

The government did not call the informant David Ortiz as a witness at trial. Instead the government prosecutors used Marc Anton to interpret the taped recorded conversation between Ortiz and Lafuente.

Marc Anton testified that, when he arrested David Ortiz, Ortiz "told him that Mr. Lafuente was a large-scale drug dealer". This was clearly hearsay testimony yet Ms. Gambino nor Keri Ambrosio raised an objection. The statement that "Lafuente was a large-scale drug dealer" left unchallenged by the defense severely prejudiced Lafuente in the eyes of the jury. With no objection or challenge from the defense the jury had to take the statement as truth. (Trial p. 56).

When government prosecutors asked Marc Anton to interpret sounds and phrases heard on the tape recording between Ortiz and Lafuente, Anton gave answers tailored to support the government's

13.

case against Lafuente and Ms. Gambino nor Keri Ambrosio raised any objections to Anton's prejudicial answers. When Anton was asked about a sound that was heard on the tape recording between Ortiz and Lafuente, Anton answered "it's the sound of a slide on a firearm, a semi-automatic pistol" indicating that Lafuente was in possession of a firearm. This statement was speculation and prejudicial to Lafuente yet Gambino nor Ambrosio raised no objection or challenge. (Trial, p. 75).

When the prosecutors asked Anton to interperet the phrase "All right bro, you better come by yourself'. Anton testified "Mr. Lafuente dosn't want Mr. Ortiz to bring anyone else to the transaction. Again drug dealers don't want other people around knowing what they are involved in" (Trial, p. 81). This statement was prejudicial hearsay yet Ms. Gambino nor Keri Ambrosio raised an objection or challenge. A cumulative effect of the unchallenged hearsay statements severely prejudiced Lafuente in the minds of the jurors. Anton's unchallenged statements sent the following message to the jury that **Lafuente was a large-scale drug dealer who possessed semi-automatic firearms to prevent other people from knowing that he was involved in drug dealing"**. Yet Lafuente's attorney's never made a single objection.

The hearsay statements introduced by the government prosecutors violated Lafuente's constitutional right to face his accusers and counsel's failure to object to the hearsay testimony violated his Sixth Amendment right to counsel.

## GROUND NUMBER SIX:

Ms. Gambino was ineffective for failing to investigate, interview and call available witnesses favorable to the defense.

## FACTS THAT SUPPORT GROUND NUMBER SIX:

At trial Ms. Gambino failed to call as a witness the confidential informant David Ortiz. The Government's entire case was built on the cooperation of Ortiz against Lafuente and without Ortiz there would have been no case against Lafuente. The Government did not call Ortiz because his credibility was in question and he might have been impeached before the jury. Because Ms. Gambino failed to call Ortiz as a witness the jury never heard his motivations for setting up Lafuente for the Government.

If Ms. Gambino would have called Ortiz and questioned him concerning what him and Lafuente were discussing during their tape recorded conversations it would have shown the jury that the testimony of government witness Marc Anton was fabricated to support the government's case against Lafuente.

Lafuente's jury never got to hear that Ortiz was a major drug dealer who had been busted by government agents and was working to set someone up for a drug bust so he could gain favor with government prosecutors in hopes of getting his case dismissed or receving a reduced sentence for substantial assistance to law enforcement.

Additionally Lafuente gave Ms. Gambino the names of other persons to investigate and interview who might be potential witnesses for the defense but Ms. Gambino never interviewed any

of them. Ms. Gambino's decision not to interview or call witnesses could not have been an informed decision because she did not know what information they could provide or if their testimony would be helpful to the defense.

WHEREFORE, movant prays that the court will grant him all relief to which he is entitled to.

I declare under the penalty of perjury that the foregoing is true and correct. This petition signed and sworn under oath qualifies as a sworn affidavit. See Title 28 U.S.C. §1746.

_Fabian Lafuente_
Fabian Lafuente
#13921-424
Federal Correctional Inst.
P.O. Box 1731
Waseca, Minnesota. 56093

16.

## Certificate Of Service

I Fabian Lafuente, swear under penalty of perjury that I have mailed a copy of the foregoing motion under 28 U.S.C. §2255 to United States Attorney's Office, Northern District of Illinois, 219 South Dearborn Street, Chicago, Illinois. 60604, by placing said motion in a prepaid postage envelope and depositing same in the prisoners mail box at a Federal Correctional Institution this 47th day of January 2008. (28 U.S.C. §1746).

_Fabian Lafuente_
Fabian Lafuente

## Certificate Of Mailing

I, Fabian Lafuente, swear under penalty of perjury that I have mailed the Original and two copies of the foregoing motion under 28 U.S.C. §2255 to the Office Of The CLerk, United States District Court, 219 South Dearborn Street, Chicago, Illinois. 60604 by placing said motions in a prepaid postage envelope and depositing same in the prisoners mail box at a Federal Correctional Institution this 47th day of January 2008. (28 U.S.C. §1746).

_Fabian Lafuente_
Fabian Lafuente

ADDRESS:

Fabian Lafuente
#13921-424
Federal Correctional Institution
P.O.Box 1731
Waseca, MInnesota. 56093

17.