08CV160
JUDGE LEINENWEBER
MAGISTRATE JUDGE DENLOW

**FILED**

JAN 0 8 2008 *aew*
JAN 08 2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Respondant, | ) | |
| | ) | |
| v. | ) | Case No.  01-CR-881 |
| | ) | |
| FABIAN LAFUENTE, | ) | |
| Movant. | ) | Judge Harry D. Leinenweber |

## MOVANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION UNDER 28 U.S.C. §2255

Comes now the Movant Fabian Lafuente, acting pro se and respectfully submit this memorandum of law in support of the foregoing motion under Title 28 U.S.C. §2255.

### CONFLICT OF INTEREST

Criminal defendants are guaranteed effective assistance of counsel and have the right to representation free from conflict of interest, at all stages of the proceedings against them. See Hall v. United States, 371 F.3d 969 (7th Cir. 2004).

Lafuente was denied effective assistance of counsel at the pre-trial stage and at trial due to the fact that his attorney Ms. Andrea Gambino was representing him under a conflict of interest. Prior to trial and during trial Ms. Gambino was under investigation and facing serious criminal charges by the same United States Attorney's Office that was prosecuting Lafuente. See Thompkins v. Cohen, 965 F.2d 330 (7th Cir. 1992)."Criminal investigation of criminal defendant's lawyer can create conflict of interest". Also see U.S. v. McLain, 823 F.2d 1457 (11th Cir. 1987); United States v. Marin, 630 F. Supp 64 (N.D. Ill. 1985).

A case on point with Lafuente's is <u>United States v. Marin</u>, 630 F. Supp. 64 (N.D. Ill. 1985), where the defendant claimed she had been denied effective assistance of counsel on grounds that while he was representing her, her counsel was under investigation by United States Attorney's Office and as potential defendant was cooperating to avoid indictment. id at p. 64.

The <u>Marin</u> trial judge in granting the defendant a new trial made the following finding's

> [1]  The court has examined the record of the trial and does not find from that record any evidence that Mr. Schachter did anything less than a competent and lawyer like job for Ms. Barreto. One enters the area of fruitless speculation, however as to whether in another circumstance he might have done a better job, followed other tactics than utalized at trial, called or not called witnesses; all imponderables of resolution.

> Concluding, therefore that Ms. Barreto had competent representation as evidenced from a reading of the trial record, the issue before the court is reduced to one of whether in a factual situation where her attorney at the time of trial was under investigation by the United States Attorney's Office and was negotiating his way out of his own potential indictmnet by cooperating with the government, a circumstance of which Ms. Barreto was never informed, he was able to give his client the undivided loyalty and dedication which the Attorney-client relationship requires.

> [2]  It is the conclusion of the court that during the course of Ms. Burreto's trial her attorney, in his desire to integratiate himself with representatives of the U.S. Attorney's Office or in his fear of offending them in the course negotiations seeking consideration for himself from them, may have done less than he might oterwise have done for his client, Ms. Barreto. There is nothing in the record which makes it clear that this was the fact, but as

long as the possibility exists and the basis
for such speculation may reasonably be indulged
it is the conclusion of the court that Ms.
Baretto might not have had the full effective
assistance of counsel to which she was entitled.

Convictions should not be allowed to stand,
nor sentences be served in the presence of such
doubt. For the foregoing reasons, therefore
the motion of Aida Serna Baretto for a new trial
is granted. id. <u>United States v. Marin</u>, 630
F.Supp. at 66.

Although Judge Leinenweber found that Ms. Gambino and Ms.

Ambrosio's representations of Lafuente was "most adequate".

(Hearing Transcript, March 11, 2004, p.2, lines 15-19). Judge

Leinenweber's finding's do not take into consideration that

without Ms. Gambino's conflict of interest, Ms. Gambino and Ms.

Ambrosio might have done a better job representing Lafuente.

Like the defendant in the <u>**Marin**</u> case Lafuente was never

informed of Ms. Gambino was being investigated by the U.S.

Attorney's Office that was prosecuting him and was seeking to

negotiate her way out of her own potential indictment by

cooperating with the Government. (See Exhibit D, Copy of <u>United

States v. Marin</u>, ).

In <u>Thompkins v. Cohen</u>, 965 F.2d 330 (7th Cir. 1992), the

Seventh Circuit held,

"    The existence of a conflict does not
automatically entitle the defendant to habeas
corpus on the grounds that he was deprived
of his constitutional right to effective
assistance of counsel. Unless the conflict
**was brought to the trial judge's attention**"
id. at p.332 (empysis added).

In this case Judge Leinenweber was advised at the start of

trial that ther was a problem with Ms. Gambinos representation

of Lafuente. (Trial Transcript, p's, 32 thru 36). Although the discussion concerning Ms. Gambino's conflict was had in chambers off the record it was certainly revealed to the trial judge that there existed a conflict of interest.

Because Judge Leinenweber was advised of Ms. Gambino's conflict of interest by government prosecutors and Ms. Gambino herself, Lafuente is not required to point out any specific instance in which Ms. Gambino and Ms. Ambrosio were ineffective or would have done somthing different. See Culyer v. Sullivan, 446 U.S. 335, 348, 100 S.Ct. 1708, 1718, 64 L Ed 2d 333 (1980) also United States v. Cirrincione,780 F.2d 620, 630-31) (7th Cir. 1985).

Because the trial judge knew about Ms. Gambino's entanglement with the criminal justice he was required to inquire further into the matter and determine for example, whether Lafuente wanted to be represented by Ms. Gambino regardless. See Wood v. Georgia, 450 U.S. 261, 272, 101 S.Ct. 1097, 1103, 67 L Ed. 2d 220 (1981) also United States v. Cerro, 872 F.2d 780, 783 (7th Cir. 1989). Here Judge Leinenweber did not address Lafuente to determine if Lafuente knew of Ms. Gambino's conflict of interest and if Lafuente wanted to be represented by Ms. Gambino at trial. Instead of making a further inquiry by personally addressing Lafuente the trial court relied on Ms. Gambino's word testimony that she had advised Lafuente of the conflict and that Lafuente wanted Ms. Gambino to represent him at trial. (See Hearing Transcript, March 11, 2004, p. 3, lines 5-8). Ms. Gambino

perpertrated a fraud on the court when she falsely told the
court she had advised Lafuente of her conflict and that he
wanted her to represent him at trial. (See Lafuente's Affidavit
at Exhibit C). Ms. Gambibo's lying to Judge Leinenweber about
advising Lafuente of her conflict and that he wanted her to
represent him at trial shows how desperate she was to stay on
the case so she could pull her punches and insure a conviction
for the Government and save herself from indictment and prosecution
for her criminal acts of harboring illegal alien Jorge Ramos-
Gonzales and aiding him to escape.

Lafuente was severely prejudiced by the trial courts
failure to conduct a hearing into Ms. Gambino's conflict of
interest and personally advise Lafuente of the nature of the
conflict and let him decide if we wanted Ms. Gambino to
represent him at trial. See United States v. Horton, 845 F.2d
1414 (7th Cir. 1988). " If defendant or his attorney gives trial
court notice of alledged conflict of interest, and trial court
fails to inquire, reviewing court will presume prejudive upon
showing of possible prejudice". id at p. 1414 Keynote [4].

Even given the high degree of deference required by
Striclkand v. Washington, 466 U.S. 668 (1984), Ms. Gambino's
actions was a an egregious flaw in Lafuente's case which would
not be considered within the "wide range of profesionally
competent assistance" and thus Ms. Gambino's performance was
inadequate under the Sixth Amendment.

There can be no question that Lafuente was denied a fair
trial.

## CUMULATIVE EFFECT OF COUNSEL'S ERRORS

The cumulative impact of Ms. Gambino's deficiencies prejudiced Lafuente's right to a fair trial. A cumulative error analysis entailes "quantitive analysis". See Habeas Corpus and Cumulative Error, 46 Baylor l. Rev. 59,60 (1993). When analysing the errors made in this case by Ms. Gambino and Ms. Ambrosio at the pre-trial stage and at trial the facts and evidence readily reveal that the errors rate as very serious errors and without those errors there would have been a different outcome to the case. The plathora and gravity of counsel's errors rendered the proceedings fundamentially unfair.

## ATTORNEY-CLIENT PRIVILEGE

Pursuant to Rule 201, Federal Rules of Evidence moves the court to take JUDICIAL NOTICE and enter same into the records that by raising ineffective assistance of counsel claims in his motion under 28 U.S.C. §2255 he is not waiving his Attorney-Client Privilege rights at this stage.

Attorney-Client Privilege rights are not waived until a hearing is conducted. See 81 Am Jur 2d §339, "The attorney-client privilege is not waived unless a client testifies as to content of privileged conversation with his or her attorney or agent". Also see Tasby v. United States, 504 F.2d 332 (8th Cir. 1975); also Laughner v. United States, 373 F.2d 326 (5th Cir. 1996).

Lafuente will waive his Attorney-Client privilege rights at an evidentiary hearing conducted in this matter where he can cross-examine all testimony given by any of the attorney's who may have represented him in any criminal matter including this case.

## EVIDENTIARY HEARING

The standard of review for an evidentiary hearing in the Seventh Circuit is delienated in United States v. Hall, 371 F.3d 969, 972 (7th Cir. 2004). "A §2255 petitioner is entitled to an evidentiary hearing on his claims, when he alledges facts that if proven would entitle him to relief".

Lafuente has raised a claim of ineffective assistance of counsel due to an actual conflict of interest and has alledged facts that if proven would entitle him to relief in the form of a new trial. Lafuente has also provided reliable evidence that supports his claim of ineffectiveness of counsel and a signed/ sworn Affidavit under the penalty of perjury that must be taken as true until proven otherwise.

An evidentiary hearing is necessary because the files, records and motions of the case do not show that Lafuente is entitled to no relief. (28 U.S.C. §2255). In order for the court to make a fully informed and reliable decision on the merits of Lafuente's claim of ineffective assistance of counsel an evidentiary hearing is necessary to expand the records.

An evidentiary hearing is necessary to determine whether Ms. Gambino's representation of Lafuente was influenced by her desire to protect her relationship with the United States Attorney who was prosecuting Lafuente in hopes of avoiding her own indictment and prosecution for her criminal acts by the same U.S. Attorney's Office. The facts alledged by Lafuente in support of his claim lie outside the records of this case.

WHEREFORE Lafuente respectfully moves the court to issue an Order granting the following relief:

(1)    Issue an Order vacating Lafuente's conviction and sentence and Order that a new trial be had in this case. Or in the alternative;

(2)    Issue an Order directing the United States Attorney to respond to Lafuente's §2255 motion.

(3)    Order that an evidentiary hearing be conducted in this matter.

(4)    Appoint counsel to represent Lafuente at any hearings conducted in this matter.

(5)    Issue a Writ of Adtestificandum for Lafuente's to be present at all hearings conducted in this matter.

Respectfully submitted

Fabian Lafuente
Movant, pro se.

ADDRESS:

Fabian Lafuente
#13921-424
Federal Correctional Institution
P.O.Box 1731
Waseca, Minnesota. 56093

8.

Page 1 of 2

## ...MIT A REQUEST FOR INVESTIGATION

...g a Request for an Investigation of an Attorney | Effect on Your Legal Rights | Other
Information Provided by the ARDC

## REQUEST FOR INVESTIGATION OF A LAWYER FORM

Request an investigation of an Illinois lawyer by printing, completing and returning this form to the
Chicago or Springfield ARDC offices. The Chicago office is located at 130 East Randolph Drive,
Suite 1500, 60601-6219. The Springfield office is located at the One North Old Capitol Plaza, Suite
333, 62701-1625.

1. Your name: _Arturo Leofuente_

Street Address: _13 Highbury Street._

City: _Elgin_ State: _IL_ Zip: _60120_

Home Phone Number: _847 - 697 - 2869_

Business Phone Number: _630 676 2869._

**RECEIVED**

NOV 1 3 2003

ATTY. REG. & DISC. COMM.
CHICAGO

2. Name of Lawyer you are complaining about: _Andrea Elizabeth Gambino_

Name of Law Firm: _Gambino N Associates. (Keri AAmbrosio_

Street Address: _53 W. Jackson Boulevard Suite 926_

City: _Chicago_ State: _Il_ Zip: _60604_

Phone Number: _312 - 322 - 0814_

3. Did you employ the lawyer?

Yes _X_

If yes, when was the lawyer hired? _9/19/03_

How much did you pay for the lawyer? _$20,000_

No _____

If no, what is your connection to the lawyer? _____

4. If your complaint relates to a lawsuit, please give the following:

Name of court (for example: Circuit Court of Cook County):
_US District Court Northern District of IL (Chicago)._

MOVANT'S
EXHIBIT-A

_USA. vs. Lafuente_

umber: _1:01 CR 00 881_

...e describe what the lawyer did or failed to do that you believe may have been improper. If you
...oyed the lawyer, explain what you employed the lawyer to do. Include important dates and
...mes, addresses and telephone numbers of witnesses and other people involved. Do not include
opinions or arguments. Attach copies of any documents that support your complaint, such as fee
agreements, receipts, checks, letters and court papers.

On 9/10/02 Mrs. Andrea Gambino was hired
to defend my son Fabian Lafuente. It was
another nine months before she came to visit
him. or do anything on the case. She did
not disclose to us she was under investigation.
at the time of retaining her services. She
also stated she would take on the case for
$10,000 this would pay for trial + sentencing.
It wasn't until 3 days befor trial 9/13/03
we were notified she needed another $10,000
for trial + sentencing. With no other choice we paid
her the funds requested. She did not use
pertient information given to her during pretrial
investigations. Her actions of requesting continuances
show incompetance. It wasn't until the end of my son

Date: _11/10/03_        Signature: _Arturo Lafuente_

Back to Top

trial that Gambino disclose she
will be spended during my son's
given sentancing Jan. 2004. Her
Suspension is for a specified period.
January 1 2004 and ends March 31, 2004.
The definition of disposition is
for the lawyer has engaged in
misconduct and that the misconduct
warrants an interruption of the lawyers
authority to practice law during the
Suspension period; The lawyer is
NOT authorized to practice law
during the period of the suspension.
Then she (Mrs. Andrea E Gambino) requested
arother a $10,000 for sentancing. We did not
find this acceptable on requested her
dismisal from my son case. Nov 3 2003.
We requested for a refund
soon after this was not
the Agreement. She has yet
to respond to our request for
a refund of the $10,000, nor
has she provided us documentations
up until the date of dismisal
I can be contacted on my
cell phone. (630)-

be out of town from the 10th through
the 16th. Thank you very much
for your time + consideration.

RECEIVED

NOV 1 3 2003

ATTY. REG. & DISC. COMM.
CHICAGO

BEFORE THE HEARING BOARD
OF THE
ILLINOIS ATTORNEY REGISTRATION
AND
DISCIPLINARY COMMISSION

In the Matter of:
ANDREA E. GAMBINO, Attorney-Respondent, No. 6224983.  Commission No. 02 CH 81
FILED ? September 5, 2002

COMPLAINT

Mary Robinson, Administrator of the Attorney Registration and Disciplinary Commission, by her attorney Wendy J. Muchman, pursuant to Supreme Court Rule 753(b), complains of Respondent Andrea E. Gambino, who was licensed to practice law in Illinois on November 18, 1994, and alleges that Respondent has engaged in the following conduct which tends to defeat the administration of justice or to bring the courts or the legal profession into disrepute:

COUNT I

1. In 1975 Jorge Ramos-Gonzalez was deported from the United States after a conviction for drug distribution. He illegally reentered the United States and in 1980 was convicted of unlawfully dealing in firearms and ammunition. After serving his jail sentence, he was deported on September 5, 1984. He returned again, was deported in 1989, and returned illegally again in 1995.

2. Between October 1, 1994 and November 31, 2000, Respondent was employed as an attorney for the federal defender program of the United States District Court for the Northern District of Illinois.

3. On February 13, 1996, Respondent was the federal defender appointed to represent Jorge Ramos-Gonzalez in the matter *United States of America v. Jorge Ramos-Gonzalez*, 95 CR 486. Ramos-Gonzalez was charged with possession of heroin with the intent to distribute in violation of 21 U.S.C. ?841(a)(1) and illegal reentry into the United States after conviction of an aggravated felony in violation of 8 U.S.C. ?1326. This was the fourth time Ramos-Gonzalez had been charged with illegal reentry into the United States.

4. On February 13, 1996, with Respondent present, Ramos-Gonzalez withdrew his plea of not guilty and entered a plea of guilty. The matter was referred for a presentence investigation and sentencing was set for April 26, 1996.

5. On April 19, 1996, Respondent filed an unopposed motion to continue the sentencing. Sometime prior to May 24, 1996, the pre-sentence report was served upon Respondent. Pursuant to two subsequent motions, sentencing was eventually set for July 22, 1996.

6. On July 16, 1996, Respondent filed a motion for downward departure from the sentencing guidelines, arguing that a 16 level sentencing enhancement due to Ramos-Gonzalez's previous criminal record and history of illegal entries was incorrect. In the pre-sentence report, the probation department requested an upward departure from sentencing guidelines.

EXHIBIT - B

MOVANT'S

7. On July 22, 1996, Respondent was present in court with Ramos-Gonzalez at his sentencing hearing. She presented her objections to the recommendations for an enhancement of sentencing based upon her client's prior record. Judge Norgle denied both Respondent's request for a downward departure and the probation department's request for an enhancement of sentencing guidelines. Although he rejected the probation department's position, Judge Norgle commented that it had "a great deal of merit." In imposing a sentence at the highest end of the sentencing guidelines, Judge Norgle noted that Ramos-Gonzalez had not only illegally reentered the United States, but he had violated the criminal laws of the country upon doing so. Further, the Court considered Ramos-Gonzalez previous criminal history as set forth in part in paragraph 1 above.

8. On July 22, 1996, Judge Norgle sentenced Ramos-Gonzalez to custody in the United States Bureau of Prisons for sixty-three months to be served consecutively on counts one and two of the superseding indictment. Upon release from imprisonment, Ramos-Gonzalez was placed on supervised release for five years. The court also indicated that Ramos-Gonzalez should be incarcerated in a facility with a program relating to substance abuse so he could obtain treatment for his twenty-year heroin and drug addiction. Respondent was present at the sentencing hearing.

9. On March 26, 2000, Ramos-Gonzalez was released from prison and deported from the United States to Mexico. At all times relevant to this complaint, Respondent was aware that Ramos-Gonzalez had been deported.

10. In late March 2000, while Ramos-Gonzalez was in Mexico, he contacted Respondent at the federal defender's office on several occasions to discuss his situation. At all times relevant, Respondent knew Ramos-Gonzalez was in Mexico at the time of these calls.

11. Sometime in late March or early April 2000, Ramos-Gonzalez illegally reentered the United States. Sometime in April 2000, Respondent received a phone call from Ramos-Gonzalez. At that time, Respondent knew Ramos-Gonzalez was back in the United States.

12. At all times relevant, Respondent knew that Ramos-Gonzalez had illegally reentered the United States in violation of the terms of his supervised release.

13. In April 2000, Ramos-Gonzalez contacted Respondent by telephone. They had a phone conversation during which it was agreed they would meet for lunch. Shortly thereafter they had lunch at the Como Inn in Chicago, Illinois.

14. From April 2000 through September 23, 2000, Respondent and Ramos-Gonzalez commenced a personal relationship.

15. During the time period of their personal relationship, Respondent bought Ramos-Gonzalez a pair of eyeglasses for approximately $200.00, purchased a 1986 red Kawaski Vulcan motorcycle, possession of which she often gave to Ramos-Gonzalez, and purchased dinners for Ramos-Gonzalez. In addition, he used her credit card to pay his phone bill.

16. On September 22, 2000, Respondent's husband called the Evanston police to advise them that Ramos-Gonzalez was an illegal alien, was holding Respondent against her will and would soon be arriving at 1115 Lee St., Evanston, IL, the residence of some friends of Respondent. The Evanston police went to the Lee street location. Respondent and Ramos-Gonzalez arrived shortly thereafter. Upon seeing the police, Respondent instructed Ramos-Gonzalez to leave the scene. She gave him the keys to her 1995 Toyota Camry and he left driving Respondent's car.

17. At all times relevant there was in force and effect 8 U.S.C. ?1324, **Bringing and Harboring Certain Aliens**, which provided in pertinent part that:
any person who knowingly or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law, conceals, harbors, or shields from detection, or attempts to conceal, harbor or shield from detection, such alien in any place, including any building or any means of transportation:?shall be punished as provided in subparagraph (B).

18. Respondent's actions, including those whereby she provided Ramos-Gonzalez with food, glasses, a motorcycle and the keys to her car to leave a scene where the police were located, were in violation of 8 U.S.C. ? 1324.

19. By the conduct set forth in paragraphs 1 through 18 above, Respondent has engaged in the following misconduct:

a. committing a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects in violation of Rule 8.4(a)(3) of the Illinois Code of Professional Conduct;

b. engaging in conduct that is prejudicial to the administration of justice in violation of Rule 8.4(a)(5) of the Illinois Code of Professional Conduct; and c. engaging in conduct which tends to defeat the administration of justice or to bring the courts or the legal profession into disrepute in violation of Supreme Court Rule 771.

WHEREFORE, the Administrator requests that this matter be assigned to a panel of the Hearing Board, that a hearing be held and that the panel make findings of fact, conclusions of fact and law and a recommendation for such discipline as is warranted.
Respectfully submitted,

Mary Robinson, Administrator
Attorney Registration and
Disciplinary Commission

By: Wendy J. Muchman
Wendy J. Muchman
Counsel for Administrator
130 E. Randolph Drive
Suite 1500
Chicago, IL 60601
Telephone: (312) 565-2600

STATE OF MINNESOTA)
                  )  SS        AFFIDAVIT OF FABIAN LAFUENTE IN
COUNTY OF STEELE  )            IN SUPPORT OF MOTIOMN UNDER 28
                               U.S.C. §2255

I, Fabian Lafuente, swear under penalty of perjury that all statements made by myself herein are true and correct to the best of my knowledge and belief.

1. That I am the Defendant Fabian Lafuente, in Case Number 01-CR-881, in the United States District Court for the Northern District of Illinois, Eastern Division, the Honorable Harry D. Leinenweber presiding.

2. That during my trial in September 2003, I was represented by Attorney's Andrea Gambino and her associate Keri Ambrosio,

3. That prior to hiring the services of Andrea Gambino. Ms. Gambino did not advise me or my family that she was under investigation by the United States Attorney's Office that was prosecuting me on drug trafficking charges and that she was facing serious criminal charges and had admitted her guilty.

4. That prior to trial or during trial Ms. Gambino nor Keri Ambrosio advised me that Ms. Gambino was being investigated by the same United States Attorney's Office that was prosecuting me and that Ms. Gambino was facing a fine and up to ten years in prison for haboring an illegal alien.

5. That I did not become aware of Ms. Gambino's involvment in criminal activity and that she was facing serious criminal charges until after my trial and conviction.

6. That at no time prior to my trial or during my trial did Ms. Gambino or the trial court personally advise me that Ms. Gambino was facing serious criminal charges by the same U.S. Attorney's Office that was prosecuting me.

7. That prior to trial or during trial Ms. Gambino did not advise me that she was undergoing psychiatric treatment for major depression which included her consuming powerful mind altering psychotropic drugs.

8. That Dr. Staffor Henry, a board certified Psychiatrist that was treating Ms. Gambino opined that "Major depression contributed to Gambino's poor decision making ability".

1.

*EXHIBIT-C*

MOVANT'S

8.  That during my trial Ms. Gambino was under the influence of powerful mind altering drugs that impared her mental process and affected her ability to effectively represent my interests.

9.    That prior to trial I told Ms. Gambino that I was not going to testify at trial. At trial Ms. Gambino badgered and coerced me into taking the stand to testify in my defense. Ms. Gambino had not prepared me to testify and I was not prepared to testify. As a results of not being prepared to testify I became confused and made statements that helped the government to convict me. I did not want to testify.

10.  If Andrea Gambino or her associate Keri Ambrosio or the court or prosecuting attorney's would have advised me that Ms. Gambino was under investigation for criminal acts and facing serious criminal charges by the same U.S. Attorney's Office that was prosecuting me I would not have allowed her to represent me at trial or any further.

11.  That prior to trial I requested Ms. Gambino to interview and call a number of witnesses to testify on my behalf and she failed to do so. I have been unable to obtain affidavits from the intended witnesses due to my incarceration. I have personal knowledge of what every witness would have testified to and if granted an evidentiary hearing I will subpoena witnesses to support my claim that Ms. Gambino failed to interview or call witnesses favorable to the defense.


I have personal knowledge of the information contained in the statements made herein and will testify under oath to those statements if asked to do so.


FURTHER AFFIANT SAYETH NAUGHT.


Date  *12-28-2007*                    SS *Fabian Lafuente*
                                        Fabian Lafuente


Address:

Fabian Lafuente
#13921-424
P.O.Box 1731
Waseca, Minnesota. 56093

2.

**64**          **630 FEDERAL SUPPLEMENT**

bly be joined with the one plaintiffs have already instituted against the time charterers so that the entire dispute could be settled in one action.

### III.  Conclusion

This action is DISMISSED under the doctrine of *forum non conveniens* on the condition that Societe submit itself to the jurisdiction of the English courts as outlined above.  The dismissal is without prejudice, and the plaintiff may reinstitute the proceeding upon Societe's default.  The Clerk is directed to retain the posted security until the Court is notified that Societe has satisfied the conditions incident to this dismissal.

affirmed
761 F2d 426 (7thCir. 1986)

### UNITED STATES of America, Plaintiff,

v.

### Hector MARIN and Aida Serna Barreto, Defendants.

No. 83 CR 417.

United States District Court,
N.D. Illinois, E.D.

Oct. 30, 1985.

On Motion to Reconsider
Jan. 6, 1986.

Defendant was convicted after a bench trial before Stanley J. Roszkowski, J., and her conviction was affirmed by the Seventh Circuit Court of Appeals.  Defendant claimed that she had been denied effective assistance of counsel on ground that, while he was representing her, her counsel was under criminal investigation by United States Attorney's office and, as potential

defendant, was cooperating to avoid indictment.  The District Court, McGarr, Chief Judge, held that trial counsel, in his desire to ingratiate himself with representatives of United States Attorney's office, or in his fear of offending them in course of his negotiations seeking consideration for himself, as potential defendant in criminal investigation, might have done less than he might otherwise have done for client, and so long as possibility existed, and basis for such speculation might reasonably be indulged, defendant did not have full and effective assistance of counsel to which she was entitled.

New trial granted; conviction and sentence vacated.

**1. Criminal Law ⚖=641.13(2)**

There was no evidence in record that defendant's trial counsel did less than competent and lawyer-like job for defendant, even though, at time of trial, counsel was himself under criminal investigation and as potential defendant, was cooperating with United States Attorney in attempt to avoid indictment.  U.S.C.A. Const.Amend. 6.

**2. Criminal Law ⚖=641.13(2)**

Trial counsel, in his desire to ingratiate himself with representatives of United States Attorney's office, or in his fear of offending them in course of negotiations seeking consideration for himself, as potential defendant in criminal investigation, might have done less than he might otherwise have done for client, and so long as possibility existed, and basis for such speculation might reasonably be indulged, defendant did not have full and effective assistance of counsel to which she was entitled.  U.S.C.A. Const.Amend. 6.

**3. Criminal Law ⚖=700(1)**

Assistant United States Attorney who represented Government in defendant's attempt to obtain new trial, on ground that her trial counsel had been under criminal investigation and had been cooperating

quiring Societe to submit to English jurisdiction and post equivalent security in the alternative forum, "the conditional dismissal satisfies both

the concerns of availability and adequacy."  *Perusahaan*, 711 F.2d at 1239.

MOVANT'S
EXHIBIT-D

...ting to avoid indict-
...urt, McGarr, Chief
...ounsel, in his desire
...rith representatives
...ey's office, or in his
...n in course of his
...nsideration for him-
...dant in criminal in-
... done less than he
...done for client, and
...isted, and basis for
...; reasonably be in-
...not have full and
...ounsel to which she

conviction and sen-

l.13(2)
...ence in record that
...l did less than com-
...job for defendant,
...f trial, counsel was
...investigation and as
...s cooperating with
...in attempt to avoid
...onst.Amend. 6.

l.13(2)
...desire to ingratiate
...itatives of United
...e, or in his fear of
...rse of negotiations
...r himself, as poten-
...ninal investigation,
...han he might other-
...nt, and so long as
...basis for such spec-
...ly be indulged, de-
...ill and effective as-
...vhich she was enti-
...mend. 6.

(1)
...ates Attorney who
...t in defendant's at-
...al, on ground that
...een under criminal
... been cooperating

...y and adequacy." Pe-
...9.

with the United States Attorney in attempt to avoid indictment at time that he was representing her, did not act in any improper manner.

Robert B. Breisblatt, Asst. U.S. Atty., Chicago, Ill., for plaintiff.

Steven B. Muslin, Michael Wilke, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

McGARR, Chief Judge.

The defendant, Aida Serna Barreto, was convicted after a bench trial before The Honorable Stanley J. Roszkowski on September 5, 1983, and sentenced to five years incarceration. Her conviction was affirmed by the Seventh Circuit Court of Appeals and the mandate issued on May 30, 1985. Since that time, defendant has remained at large pending the resolution of certain post-trial motions, the final disposition of which is the purpose of this opinion.

The following facts have been asserted by defendant Barreto and established in hearings before the court. They are the fact that defendant was represented at her trial by attorney Martin Schachter, who for a period before and during her trial, was under criminal investigation by the United States Attorney's Office, and as a potential defendant, was cooperating with the United States Attorney in an attempt to avoid indictment. Testimony of Mr. Schachter in another context reveals that at the time of the trial, for reasons stated above, he was suffering from a great deal of personal anxiety, which the defendant feels may have contributed to what she regards as ineffectual defense. She further argues that the United States Attorney's Office was not in a position to discuss a plea agreement on defendant's case, nor was Mr. Schachter in a position to insist upon or discuss such an agreement, because of the highly unusual nature of the then relationship of attorney Schachter and the United States Attorney's Office.

For the foregoing reasons, it is the contention of defendant Barreto that she was denied the effective assistance of counsel, which is guaranteed to her by the Sixth Amendment to the Constitution of the United States.

On Aida Serna Barreto's behalf, new counsel substituting for previously mentioned attorney Schachter, filed a motion for a new trial, sought to subpoena certain of the government's records in connection with her trial before Judge Roszkowski, and sought an evidentiary hearing on the question of the competence of counsel Schachter to represent her. It is Barreto's contention that Schachter's agitation over his potential involvement in criminal accusations, and the conflict of interest arising out of his negotiations with the government on his own behalf, and his efforts to cooperate with the government in order to persuade the U.S. Attorney to leave him unindicted in return for his testimony against others, made impossible the fulfillment of his obligation of total and undivided loyalty to his client, Barreto.

No serious disagreement as to the facts arose during the several hearings and conferences with the court on this case due largely to the expected, but nonetheless commendable, cooperation of the attorney for the government, Mr. Robert B. Breisblatt, in agreeing with counsel for Barreto on the salient facts necessary to the resolution of this matter.

Among those facts accepted by the court is the fact that the prosecution of Ms. Barreto and her codefendant and the conviction obtained, took place while AUSA Breisblatt was totally unaware of the involvement of Mr. Schachter, the defense attorney, with another assistant U.S. attorney concerning his potential criminal liability referred to above. Mr. Breisblatt argued further that there could have been no effect on the decision of the government to discuss a plea bargain with Ms. Barreto since it was his unvarying policy and that of his office, that upon the filing of a motion to suppress and the setting by the court of a hearing on the motion to sup-

press to be followed immediately by the trial, no plea bargaining was ever engaged in.

[1] The court has examined the record of the trial and does not find from that record any evidence that Mr. Schachter did less than a competent and lawyer-like job for Ms. Barreto. One enters the area of fruitless speculation, however, as to whether in another circumstance he might have done a better job, followed other tactics than utilized at the trial, called or not called witnesses; all imponderables incapable of resolution.

Concluding, therefore, that Ms. Barreto had competent representation as evidenced from a reading of the trial record, the issue before the court is reduced to one of whether, in a factual situation where her attorney at the time of trial was under investigation by the United States Attorney's Office and was seeking to negotiate his way out of his own potential indictment by cooperating with the government, a circumstance of which Ms. Barreto was never informed, he was able to give his client the undivided loyalty and total dedication which the attorney-client relationship requires.

It is possible that Ms. Barreto, having been informed of her attorney's situation, might have expressed her confidence in him by agreeing that his extraneous relationship with the government did not, in her judgment, interfere with his ability to represent her. Had that disclosure been made to her and had she so agreed, the problem would not now be before the court. But this was not done and the problem is before the court.

[2] It is the conclusion of the court that during the course of Ms. Barreto's trial, her attorney, in his desire to ingratiate himself with representatives of the U.S. Attorney's Office or in his fear of offending them in the course of his negotiations seeking consideration for himself from them, *may* have done less than he might otherwise have done for his client, Ms. Barreto. There is nothing in the record which

makes it clear that this was the fact, but as long as the possibility exists and the basis for such speculation may reasonably be indulged, it is the conclusion of the court that Ms. Barreto might not have had the full and effective assistance of counsel to which she was entitled.

Convictions should not be allowed to stand, nor sentences be served in the presence of such doubt. For the foregoing reasons, therefore, the motion of Aida Serna Barreto for a new trial is granted. The judgment of guilt heretofore entered, and her conviction and sentence are vacated and the parties are instructed to appear before this court at 10:00 a.m. on November 21, 1985, for a status report and a setting of the case for trial.

[3] It is of some importance to state in this opinion that the court does not conclude from the record before it that Assistant U.S. Attorney Robert B. Breisblatt acted in any improper manner. The question of whether the United States Attorney or any of his assistants should have informed Mr. Breisblatt or the court of its dealings with attorney Schachter in the light of the secrecy then surrounding the *Greylord* investigation with which Schachter was involved, has not been presented to the court and need not be and is not the decided in this opinion.

## ON MOTION TO RECONSIDER

The court has before it the government's motion to reconsider an earlier opinion setting aside the conviction of defendant Barreto. It is the thrust of the government's motion that the court failed to advert to the Supreme Court opinion in *Cuyler v. Sullivan,* 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980), which case, as the government sees it, requires not only the finding by the court of a situation creating a potential conflict of interest, but requires that the defendant show that an actual conflict of interest adversely affected her lawyer's performance.

The government misreads the *Cuyler* case. In that case, the defendant had

vas the fact, but as
xists and the basis
iay reasonably be
usion of the court
not have had the
ance of counsel to

ot be allowed to
served in the pres-
For the foregoing
notion of Aida Ser-
al is granted. The
.efore entered, and
tence are vacated
.tructed to appear
)0 a.m. on Novem-
.atus report and a
rial.

.ortance to state in
.urt does not con-
.fore it that Assist-
.t B. Breislblatt act-
.ner. The question
States Attorney or
.uld have informed
.urt of its dealings
.. in the light of the
.g the Greylord in-
.Schachter was in-
.sented to the court
.not the decided in

.RECONSIDER

.t the government's
.earlier opinion set-
. of defendant Bar-
.f the government's
.led to advert to the
.n Cuyler v. Sulli-
.0 S.Ct. 1708, 64
.ich case, as the
.iires not only the
. situation creating
.erest, but requires
.v that an actual
.sely affected her

.ads the Cuyler
. defendant had

---

raised no objection to a multiple represen-
tation—potential conflict of interest situa-
tion, and the Supreme Court concluded that
in that state of the record it was inappro-
priate for the court of appeals to presume a
conflict of interest in the absence of any
showing thereof. It is the essence of the
Cuyler case that the court of appeals can-
not find a conflict of interest on a record
below in which the trial judge never be-
came involved, either by motion or sua
sponte, in the conflict question.

The case before this court is still before
this court and upon learning of the situa-
tion creating the spectre of conflict, coun-
sel for the defendant promptly brought it
to the attention of the court, who after a
hearing, decided that the potential for con-
flict was sufficiently great to impinge upon
defendant's right to effective assistance of
counsel.

Therefore, despite the strong language
of the majority in Cuyler, tempered consid-
erably by the confusion engendered by a
variety of partially concurring and dissent-
ing opinions, this court remains convinced
that upon the record before it, it cannot
find that Aida Barreto was not denied ef-
fective assistance of counsel, thus compel-
ling the result heretofore reached.

In arguing from the Cuyler case that it
is the burden of the defendant to demon-
strate that her attorney's conflict of inter-
est had an actual effect on his performance
at trial, the government is thrusting upon
defendant an impossible burden and upon
the court, an impossible decision. It is true
that the court has found that counsel for
Aida Barreto did a competent job. It is
equally true that it is impossible to deter-
mine whether under different circumstanc-
es he might have done a different and/or
better job. As was said earlier, the deci-
sion whether Aida Barreto should serve a
five-year sentence already imposed, or en-
joy the benefit of a new trial, should not
rest on such speculation.

For the foregoing reasons, the govern-
ment's motion to reconsider is denied.

---

CARBONE v. GULF OIL CORP.
Cite as 630 F.Supp. 67 (E.D.Pa. 1985)

67

James CARBONE, Plaintiff,

v.

GULF OIL CORPORATION, Defendant.

Civ. A. No. 85-361.

United States District Court,
E.D. Pennsylvania.

Nov. 15, 1985.

Owner of gasoline station brought ac-
tion, individually and on behalf of class,
against oil company alleging violations of
the Economic Stabilization Act and the
Emergency Petroleum Allocation Act, and
oil company moved to dismiss on basis of
statute of limitations. The District Court,
Shapiro, J., held that: (1) cause of action
accrued upon oil company's termination of
discount, and owner failed to established
fraudulent concealment tolling limitation
period, and (2) action for willful overcharg-
es was for a penalty so as to be governed
by Pennsylvania's two-year statute of limi-
tations for civil penalties or forfeitures,
despite owner's claim that two thirds of
treble damages were punitive and that one
third of damages were compensatory dam-
ages subject to six-year statute of limita-
tions.

Motion granted.

1. Federal Courts ⚖ 424
    State law determines statutory period
of limitations in action under the Economic
Stabilization Act of 1970 § 201 et seq., 12
U.S.C.A. § 1904 note, but any issue relat-
ing to accrual and tolling is governed by
federal law.

2. Limitation of Actions ⚖ 58(1)
    Cause of action accrues under the Eco-
nomic Stabilization Act of 1970, § 201 et
seq., 12 U.S.C.A. § 1904 note, when defend-
ant commits act that injures plaintiff.